**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:22-cr-20275-JEM/Becerra

UNITED STATES OF AMERICA,

v.

LAVON MOSS, JR.,

    Defendant.

_____/

**REPORT AND RECOMMENDATION[1] ON DEFENDANT'S MOTION TO SUPPRESS**

    **THIS CAUSE** came before the Court on Defendant, Lavon Moss, Jr.'s ("Defendant") Motion to Suppress Physical Evidence ("Motion"), ECF No. [19]. The United States of America (the "Government") filed a Response to Defendant's Motion, ECF No. [25], and a supplemental Notice of Authority, ECF No. [29]. The Court held an evidentiary hearing on this matter. *See* ECF No. [31]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendant's Motion be **DENIED**.

    **I.**    **BACKGROUND**

    Defendant is charged with one count of possession of fifteen or more unauthorized access devices in violation of Title 18, United States Code, Section 1029(a)(3), and three counts of aggravated identity theft in violation of Title 18, United States Code, Section 1028A(a)(1). ECF No. [1] at 1–2. As described in more detail below, based on alleged violations of Florida Statute Section 934.215 (unlawful use of a two-way communication device), and Florida Statute Section

---

[1] This Motion was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge, ECF No. [23].

893.13(1)(a)1 (sale of a controlled substance), the Miami-Dade Police Department obtained a search warrant of Defendant's home. In executing the search warrant, a detective seized: (1) a brown paper bag and book bag containing baggies of suspect marijuana; (2) a red composition notebook; and (3) an iPhone. The composition notebook allegedly contained personal identifying information (PII), which formed the basis of the instant charges.

Defendant now moves to suppress the evidence obtained in connection with the search warrant. ECF No. [19] at 5, 7. Specifically, Defendant argues that: (1) the search warrant was overbroad, and thus invalid; (2) even if the warrant were valid, the search of the notebook exceeded the scope of the warrant; and (3) the good faith exception does not apply. *See generally* ECF No. [19]. Additionally, at the evidentiary hearing Defendant argued that the search warrant was not based on probable cause, and the good faith exception cannot apply because there was a material misrepresentation within the probable cause affidavit.

In response, the Government argues that Defendant's Motion should be denied because: (1) the search warrant was not overly broad; (2) the search of the notebook did not exceed the scope of the warrant; and (3) even if the search warrant was overbroad, the good faith exception applies. *See generally* ECF No. [25]. In response to Defendant's additional argument at the hearing that there was a material misrepresentation in the probable cause affidavit, the Government maintained that the search warrant was based on probable cause that there was no material misrepresentation that would preclude the application of the good faith exception.

## II.   FINDINGS OF FACT

At the evidentiary hearing, the Government called one witness, Detective Yunieski Arriola ("Detective Arriola"), a detective with the Miami-Dade Police Department, who was subject to direct and cross-examination. Defendant called two witnesses, Detective Sergio Pagliery

("Detective Pagliery") and Detective Juan Chaidez ("Detective Chaidez"), also detectives with the Miami-Dade Police Department, who were subject to direct and cross-examination. Based on the testimony of Detective Arriola, Detective Pagliery, and Detective Chaidez, all of whom the Court finds credible, the Court finds as follows:

Detective Arriola testified that he first became aware of Defendant in connection with a homicide investigation in May 2021 (the "El Mula Investigation"). Detective Arriola learned that the subjects of the El Mula Investigation had been "hanging out" at Defendant's home prior to the homicide. Detective Arriola did not believe that Defendant was a subject in the El Mula Investigation but did believe that Defendant may have information pertaining to the investigation.

Because of the ongoing El Mula Investigation, Officer Arriola began to monitor Defendant's social media postings, specifically those on his Instagram account. *See* ECF No. [32-1] at 4. Detective Arriola believed that the account @poohsanedahomie belonged to Defendant because many of the posts depict Defendant in photographs, an Instagram Live video (a temporary video transmitted live) from that account showed Defendant's face, and Detective Arriola knew that Defendant's nickname was "Pooh." Between September 2021 and January 2022, Detective Arriola monitored Defendant's Instagram account. *Id.*

On December 31, 2021, Detective Arriola was monitoring Defendant's Instagram account and saw Defendant's Instagram "story"—a temporary post that is viewable by a user's Instagram followers. Defendant posted the text "yercs on deck." *Id.* at 5. Based on his training and experience, Detective Arriola believed that "yercs" meant Percocets and "on deck" meant that Defendant had the Percocets on him. Defendant also posted a temporary video depicting two bottles of pills. *Id.* Detective Arriola identified those pills as Percocets and Oxycodone. In the same video, Detective Arriola could hear Defendant say "C230s", "U17", "perculadies", and

"come get 'em." Based on his training and experience, Detective Arriola understood that Defendant was reading the names of the Percocet and Oxycodone pills and indicating that they were available for sale. *Id.* at 4–5. Detective Arriola did not check whether Defendant was prescribed any of the depicted drugs.

Within an hour of seeking the posts, Detective Arriola drove to Defendant's home. *Id.* Detective Arriola testified that his intent was to observe whether any drug transactions were taking place, and also to identify whether Defendant was home and had posted the Instagram stories from his home. Detectives Lopez and Pagliery also drove to the home, each in their own vehicle. When Detective Arriola arrived, he observed Defendant and two other males standing outside of the house. Detective Arriola did not witness any hand-to-hand drug transactions at the time.

Based on the information retrieved by Detective Arriola, on January 3, 2022, Detective Pagliery prepared and submitted a warrant to Instagram. *Id.* at 6. Detective Arriola did not review the returns from Instagram himself. Detective Pagliery relayed the information obtained from the Instagram warrant to Detective Arriola. On January 5, 2022, Detective Pagliery prepared a submitted a second warrant to T-Mobile. *Id.* Detective Pagliery relayed the information obtained from the T-Mobile warrant to Detective Arriola.

On January 7, 2022, Detective Arriola viewed another temporary post on Defendant's Instagram account depicting clear bags of suspect marijuana. *Id.* at 7. Detective Arriola then prepared an application for a search warrant, including an affidavit describing the probable cause for sale of a controlled substance and use of a two-way communication device while committing a crime. *See generally id.* After Detective Arriola prepared the affidavit, a sergeant reviewed the affidavit and did not make any changes. After the sergeant reviewed the affidavit, a lieutenant reviewed the affidavit and did not make any changes. After the lieutenant reviewed the affidavit,

Detective Arriola sent it to the Gang Strike Force Unit of the State Attorney's Office. An Assistant State Attorney reviewed the affidavit and did not make any changes. The Assistant State Attorney then submitted it to a state court judge, who approved and signed the warrant on January 10, 2022. *Id.* at 13.

Two paragraphs of the warrant should be noted as they are the subject of the instant motion. First, the search warrant included the "Property Sought" as:

1. Any electronic device, but not limited to cellular phones, use or owned by Instagram user "poohsanedahomie" which may have been used for the creation of these pictures and/or videos.

2. Any and all contraband.

3. Any other items deemed of evidentiary value that could be relevant to proving the above listed charges.

*Id.* at 12. Second, as part of the probable cause affidavit, Detective Arriola averred that "As of this writing, it has been determined that based on the location information provided by T-Mobile, the device is located within 'The Premises' [defined as Defendant's residence]." *Id.* at 8.

The search warrant was signed and executed on January 10, 2022. Detective Arriola participated in a planning meeting with approximately twenty-seven individuals, including various officers. The detectives arrived at Defendant's home with a SWAT team and other law enforcement officers. SWAT performed a protective sweep, removed the occupants from the house, and then permitted the officers to search the house. Detective Arriola participated in the search of the house. Detective Arriola and other officers took photographs of the house and its contents, performed a preliminary search of the house, and then performed a more thorough investigation of Defendant's bedroom. *See* ECF Nos. [32-2]–[32-17]. In Defendant's bedroom the officers found small Ziploc baggies of suspect marijuana, larger Ziploc bags of suspect marijuana within a bookbag, digital scales with drug residue, Defendant's phone, credit cards with

Defendant's name, mail with Defendant's name, and a composition notebook. *Id.* The officers impounded the evidence from the home. The search lasted approximately one hour.

During the search, Detective Arriola viewed the composition notebook on a dresser. *See* ECF Nos. [32-8], [32-9]. Detective Arriola opened the notebook, believing it to be a drug ledger. Detective Arriola knew from his training and experience that individuals who sell drugs often keep a tally of drug sales and buyer information in the form of a ledger. Detective Arriola also knew that narcotics can be hidden in drawers, bookbags, containers, socks, and even notebooks. Upon opening the notebook, Detective Arriola saw names, dates of birth, and social security numbers, which he immediately identified as PII. *See* ECF Nos. [32-15]–[32-17].

Detective Arriola prepared a property receipt identifying the items seized from the search. *See* ECF No. [32-18]. Detective Arriola identified the property seized as: (1) a brown bag; (2) a composition book; (3) suspect marijuana; and (4) an iPhone. *Id.* Detective Arriola was aware that Defendant was interviewed in a post-Miranda statement by homicide detectives, but Detective Arriola did not participate in the interview.

Detective Pagliery testified that he first became aware of Defendant in connection with the El Mula Investigation, in or after May 2021. Detective Pagliery learned that the subjects of the El Mula Investigation may have met in the area of Defendant's residence prior to the shooting. Detective Pagliery's involvement in the instant case began when he accompanied Detective Arriola on December 31, 2021, to surveil Defendant's residence. Detective Pagliery visited Defendant's residence again on January 3, 2022, to surveil the residence.

Defendant Pagliery assisted Detective Arriola in drafting two PEN registers, one to Instagram and one to T-Mobile, related to the Instagram posts from the account @poohsanedahomie. *See* ECF Nos. [34-2], [34-4]. The Instagram return identified the IP address

associated with the Instagram account @poohsanedahomie on the account creation date, as well as on various dates corresponding with Instagram posts. *See* ECF No. [34-3]. Defendant Pagliery stated that on December 25, 2021, Defendant posted a photograph of himself on Instagram. On that date, the Instagram return lists an IP address that traces back to Defendant's phone number. *Id.* The IP addresses do not indicate a fixed location. *Id.* The T-Mobile return indicated various addresses associated with the target cellular phone while it was in use. *See* ECF No. [34-5]. The addresses corresponded with cellular towers, and not exact locations of the cellular device. Many of the cellular towers were within a close range of Defendant's home.

On January 10, 2022, Detective Pagliery and Detective Arriola conducted surveillance of Defendant's home prior to the execution of the search warrant. *See* ECF No. [34-1]. Detective Pagliery saw Defendant at his home holding a cellular device. Detective Pagliery also received live updates from T-Mobile regarding the location of Defendant's cellular phone, which were transmitted to Detective Pagliery's desktop and vehicle computers. The live location updates were not linked to a specific address but rather a cellular tower and sector. Detective Pagliery relayed the location information to Detective Arriola. Based on the cellular tower information at the time of Detective Pagliery's January 10, 2022 surveillance, Detective Pagliery believed that the cellular device was located in or near Defendant's home.

Detective Chaidez testified that he first encountered Defendant during the interview of Defendant on January 11, 2022. Detective Alexandra Turnis was the lead detective in the interview and was a part of the El Mula Investigation. Detective Chaidez was not involved in the El Mula Investigation and was only present because Detective Turnis requested for him to participate. Detective Chaidez did not recall the details of the interview. A video of the interview

and the corresponding transcript were entered into evidence as Defense Exhibits 7 and 8. *See* ECF Nos. [34-7], [34-8].

### III. ANALYSIS

Defendant argues that the search warrant was overbroad and thus invalid. ECF No. [19] at 3–4. In response, the Government argues that although the search warrant could have been more specific, it is not overbroad as drafted. ECF No. [25] at 4. In addition, the Government argues that even if the search warrant was impermissibly broad, the good faith exception applies and suppression is not warranted. *Id.* at 6–10.

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.'" *United States v. Batson*, 749 Fed. Appx. 804, 806 (11th Cir. 2018) (alteration supplied) (quoting U.S. Const. amend. IV). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990)). "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally overbroad." *U.S. v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000) (citing *Stanford v. Texas*, 379 U.S. 476 (1965)). "The manifest purpose of this particularly requirement was to prevent general searches." *U.S. v. Carson*, 520 F. App'x 874, 888 (11th Cir. 2013) (quoting *Marlyand v. Garrison*, 480 U.S. 79, 84 (1987)).

The Court here does not need to determine whether the provisions of the warrant lacked sufficient particularization because even if the warrant was overbroad, the good faith exception applies. It is well-settled that the "prosecution is not barred from using in its case-in-chief evidence obtained by law enforcement officers that acted in reasonable reliance on a search warrant issued

by a detached, neutral magistrate but ultimately found to be invalid." *Carson*, 520 F. App'x at 889 (citing *U.S. v. Leon*, 468 U.S. 897 (1984)). Here, of course, there is no dispute that the officers were executing a warrant that had been signed by a detached and neutral judge.

However, as Defendant notes, this "good faith" exception is not without limitation. ECF No. [19] at 6. The four instances in which the good faith exception does not apply are: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) where "the issuing magistrate wholly abandoned his judicial role in the manner condemned in"; (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (quoting *Leon*, 468 U.S. at 923). Defendant argues that the good faith exception does not apply here because (1) "the magistrate or judge in issuing a warrant was misled by the information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," and (2) the search warrant was "so facially deficient – i.e., in failing to particularize the place to be searched or things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (quoting *Leon*, 468 U.S. at 923).

As to the first argument, Defendant asserts that the inclusion of the statement "[a]s of this writing, it has been determined that based on the location information provided by T-Mobile, the device is located within 'The Premises' [defined as Defendant's home]," was a material misrepresentation that misled the judge because the location information was not as precise as that statement suggests. Defendant also asserts that it was a material omission to not mention the El

9

Mula Investigation and the detectives' desire to question Defendant in relation to that investigation. Defendant also contends that the "property sought" section of the warrant is so broad that it cannot reasonably be presumed to be valid.

The Government counters that the good faith exception squarely applies. ECF No. [25] at 6–10. The Government contends that the information with respect to the telephone records was not a material misrepresentation, and that Detective Arriola was not required to mention the El Mula Investigation in the search warrant because it was not relevant to the alleged violations forming the basis of the search warrant. *Id.* at 8. As to the second argument, the Government contends that the warrant was not facially deficient and it was approved by the officers, a prosecutor, and a neutral judge before the Detectives relied on it. *Id.* at 10.

The undersigned finds that even if the search warrant, as drafted, was overbroad, the good faith exception clearly applies. *See Carson*, 520 F. App'x 874, 889 (applying the good faith exception and stating, "[t]he inclusion of a 'catch all' provision in attachment 1 does not render a warrant 'so facially deficient … that the executing officers cannot reasonably presume it to be valid.'") (quoting *Leon*, 468 U.S. at 923); *U.S. v. Blake*, 868 F.3d 960, 975 ("And while the warrants may have violated the particularity requirement, whether they did is . . . a close enough question that the warrants were not 'so facially deficient' that the FBI agents who executed them could not have reasonable believed them to be valid."). First, there is insufficient evidence to find that the affiant knew the information regarding the cell site locations was false or that the affiant would have known it was "false except for his reckless disregard for the truth." Indeed, there is no evidence to suggest that there was any intention to provide false information. Moreover, although the phrasing of the statement asserts more certainty from the records than was actually the case, a more careful description would not have defeated probable cause. Indeed, a more

10

precise recitation would have noted that the mobile records along with the observations of Defendant at the house lead the officers to believe that the phone was in the residence. Such a statement would not have defeated probable cause. In addition, there is no requirement that Detective Arriola include any information about the El Mula Investigation in his application for the instant search warrant and therefore the omission of such information was not a material omission such that it would preclude the application of the good faith exception.

Second, although the language as to the description of what was to be searched was broad, the Court cannot find that the warrant was so broad that the executing officers could not have reasonably presumed it valid. Indeed, the detectives had submitted the affidavit to various levels of review, the search itself was mostly confined to Defendant's room, and the search was limited items to items consistent with the two criminal statutes that were being investigated. Moreover, the search and seizure of the notebook in Defendant's room was within the scope of a search warrant in a narcotics case. Detective Arriola testified that in his training and experience, notebooks frequently serve as ledgers for drug transactions in a narcotics investigation. Upon opening the notebook, it was immediately apparent to Detective Arriola that the notebook contained PII and was subject to seizure.

### IV. CONCLUSION

For the reasons stated at the hearing and as set forth above, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress, ECF No. [19] be **DENIED**.

### V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, no later than **Wednesday, November 16, 2022.** The Parties were given ample time to argue their positions at

the conclusion of the evidentiary hearing, and the matter is now set for trial in less than a week from today, with the calendar call on November 17, 2022.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on November 15, 2022.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE