UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20275-CR-MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAVON MOSS, JR.,

    Defendant.
_____/

**DEFENDANT'S OBJECTIONS TO
THE PRESENTENCE INVESTIGATION REPORT**

Defendant Lavon Moss, through undersigned counsel, submits the following objections to the Presentence Investigation Report ("PSI").

**I. Factual Objections**

**Paragraph 12** – Mr. Moss objects to the error that law enforcement executed a search warrant regarding a possible robbery suspect. While law enforcement did execute a search warrant at Mr. Moss's home, it had no relation to any possible robbery.

**Paragraph 14** – Mr. Moss objects to the statement that he was "arrested" on January 10, 2022. He was simply "detained" that day, and later arrested.

**Paragraph 19** – Mr. Moss objects to the questioning of him regarding drug use without advice of counsel as a violation of his Sixth Amendment rights and asks that that information be stricken from the PSI and not considered against him. On July 8, 2022, the defendant formally invoked his right to silence and counsel at ECF

No. 3. The invocation informs all law enforcement agents, which includes probation officers, that any questioning of Mr. Moss that may bear on sentencing, enhanced punishments or factors applicable to the U.S. Sentencing Guidelines **must be made through undersigned counsel**.  Despite this, probation chose to question Mr. Moss about possible marijuana usage without presence of counsel and then to use those answers against him as noted in Paragraph 19 and the decision to not recommend acceptance of responsibility. The whole procedure is a violation of Mr. Moss's Sixth Amendment rights.

## II. Legal Objections

**A. Acceptance of Responsibility** – Mr. Moss has accepted responsibility. He admitted to the conduct in this case early and at every subsequent opportunity.  He gave a post-*Miranda* confession, PSI ¶ 13, and pled guilty in this case, unconditionally, after denial of a motion to suppress.  He fully accepted responsibility and should receive credit for doing so, despite the PSI's recommendation at Paragraph 19.

The Court is not obligated to find that positive tests for marijuana are evidence that Mr. Moss has not "voluntar[ily] terminat[ed] or withdraw[n] from criminal conduct or associations" within the meaning of U.S.S.G. § 3E1.1 and Application Note 1(B). *See United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017) ("although a district court has broad discretion to grant or deny a reduction under § 3E1.1, a court errs if it believes that it does not have the authority to grant such a downward reduction") (emphasis in original). The Court must consider whether the "defendant's

drug use after his arrest shows he has not accepted responsibility and turned away from the lifestyle that motivated his offense." *Id.*

Here, several factors warrant the Court exercising its discretion to grant a two-point reduction for acceptance of responsibility, notwithstanding Mr. Moss's substance abuse disorder. First, it is undisputed that Mr. Moss's "severe opioid use disorder and cannabis use disorder," PSI ¶ 75, does not relate to the conduct for which he is being sentenced. Mr. Moss has accepted responsibility for the crimes charged and nothing in the PSI suggests otherwise. The Court should therefore not further penalize Mr. Moss for his addiction.

Additionally, both federal and state law are moving away from criminalizing simple marijuana possession altogether. In October 2022, President Biden granted a "full, complete, and unconditional pardon" to individuals charged with simple marijuana possession. Proclamation No. 5366, 87 Fed. Reg. 61,441 (Oct. 6, 2022). The Department of Justice has begun implementing this proclamation and has also begun a "review of how marijuana is scheduled under federal law." Press Release, Department of Justice, Justice Department Statement on President's Announcements Regarding Simple Possession of Marijuana (Oct. 6, 2022). Likewise, the U.S. Sentencing Commission is considering amendments to the Guidelines that would reduce the impact of simple possession of marijuana offenses on Guidelines calculations. *See* U.S. Sentencing Commission, Proposed Amendments to the Sentencing Guidelines (Preliminary) at Ch. 7 (Criminal History), Sec. C (Impact of Simple Possession of Marihuana Offenses), *available at*

https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230112_prelim_RF.pdf (last accessed Feb. 2, 2023).

This is consistent with similar trends at the state level. Indeed, as the Sentencing Commission has observed, by the end of 2021, 14 states have decriminalized marijuana possession, and another 21 states have legalized possession of small quantities for personal use, for a total of 35 states who have moved to permit marijuana usage. *See* U.S. Sent'g Comm'n, *Weighing the Impact of Simple Possession of Marijuana: Trends and Sentencing in the Federal System* at 5 (2023), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2023/20230110_Marijuana-Possession.pdf (last accessed Feb. 2, 2023). Here, the PSI states that Mr. Moss was using marijuana. Because federal law is moving away from criminalizing such conduct, the Court should grant such claims little weight in its analysis.

Accordingly, the Court should grant Mr. Moss a two-point reduction for acceptance of responsibility.

**B. Erroneous loss amount calculation** – Pursuant to Paragraph 16 of the PSI, there are no identified victims who sustained a financial loss. Therefore, no enhancement for total loss should be included at Paragraph 22. The PSI errs in its interpretation of the Guidelines because the Application Notes unlawfully expand the definition of loss in U.S.S.G. § 2B1.1(b)(1). *See United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022) (holding Application Note (3)(A) unlawfully expands the loss definition); *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021) (holding

Application Note (3)(F)(i) unlawfully expands the loss definition); *United States v. Kirilyuk*, 29 F.4th 1128, 1139 (9th Cir. 2022) (same); *see also United States v. Alford*, No. 3:21CR052/MCR, 2022 WL 3577373, at *4 (N.D. Fla. Aug. 20, 2022) (following the holdings in *Riccardi* and *Kirilyuk*).

Here, the Court should find that Application Note (3)(A)—or alternatively, Application Note (3)(F)(i)—unlawfully imputes on Mr. Moss an artificial loss not supported by the Guidelines. This question has not been addressed by the Eleventh Circuit, and so the Court may decide the issue on the merits. *See United States v. Del Pino,* No. 21-11190, 2022 WL 414394, at *2 (11th Cir. Feb. 11, 2022) (acknowledging the issue has been raised in other circuits, but failing to reach the issue on the merits due to the invited-error doctrine); *see also Alford*, 2022 WL 3577373, at *4 (finding the issue has not been decided in this circuit, and district courts are free to consider the persuasive holdings of other circuits). For the reasons stated below, the Court should follow the growing number of district and circuit courts that have found these Application Notes unlawful. Having done so, the Court should find that the loss attributable to Mr. Moss under U.S.S.G. § 2B1.1(b)(1) should be limited to actual losses resulting from a defendants' actions. Here, there is no evidence of loss, and accordingly there should be no loss enhancement.

### a. The Court should not follow the Application Notes commentary where it conflicts with the Guideline.

As an initial matter, the Court should not follow the impermissibly broad definitions of loss in Application Notes (3)(A) and (3)(F)(i) under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).

*Kisor* clarified longstanding doctrine concerning judicial deference to an agency's interpretation of its own regulations. The Supreme Court reiterated that deference to agency interpretation arises only where a regulation is "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor*, 139 S. Ct. at 2414. There is no deference where an "uncertainty does not exist[.]" *Id.* at 2415. Moreover, before deferring to the agency, the court must exhaust all the "'traditional tools' of construction." *Id.* (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, n. 9 (1984)). This means carefully considering "the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* (citation omitted). If the regulation is genuinely ambiguous, then the agency's interpretation must still be "reasonable," and "come within the zone of ambiguity the court has identified after employing all its interpretative tools." *Id.* at 2415–16.

In a recent *en banc* opinion, the Eleventh Circuit held that *Kisor* applies to the interpretations of the Guidelines provided in the Sentencing Commission's commentary. *United States v. Dupree*, No. 19-13776, 2023 WL 227633, at *4 (11th Cir. Jan. 18, 2023). The *Dupree* court held that in considering the commentary to the

Guidelines, lower courts should read *Kisor* in conjunction with *Stinson v. United States*, 508 U.S. 36 (1993). *Dupree*, 2023 WL 227633, at *5. *Stinson*, in turn, provides that courts should disregard commentary where "it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Cingari*, 952 F.3d 1301, 1308 (11th Cir. 2020) (quoting *Stinson*, 508 U.S. at 38). As explained below, under *Kisor* and *Stinson*, Application Notes (3)(A) and (3)(F)(i) unlawfully expand the definition of loss in U.S.S.G. § 2B1.1(b)(1), and the Court should therefore disregard these portions of the commentary.

### b. The court should not follow the loss definition in Application Note (3)(A) because it conflicts with the Guidelines.

First, this Court should disregard Application Note 3(A) and find that the intended-loss enhancement in that note unlawfully expands the meaning of "loss" in U.S.S.G. § 2B1.1(b)(1). As explained above, U.S.S.G. § 2B1.1(b)(1) provides certain offense level enhancements based on monetary "loss" resulting from an offense. Where a loss exceeds $6,500, the Guideline goes on to provide a table of level increases based the loss amount. Although U.S.S.G. § 2B1.1(b)(1), does not mention intended loss, Application Note 3(A) instructs courts to apply the higher of *actual loss* or *intended loss* resulting from an offense. *See* U.S.S.G. § 2B1.1(b)(1) cmt. n.3(A)(i).

Pursuant to *Kisor* the word "loss" at U.S.S.G. § 2B1.1(b)(1) must be genuinely ambiguous after exhausting traditional tools of construction. Here, "loss" as used in U.S.S.G. § 2B1.1(b)(1) is not ambiguous. As the Third Circuit has stated, a "review of

common dictionary definitions of 'loss' point to an ordinary meaning of 'actual loss.'" *United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022). No common dictionary definition suggests that "loss" means "intended loss." *Id.* While loss *could* mean intended loss in some hypothetical context "in the context of a sentence enhancement for basic economic offenses [under U.S.S.G. § 2B1.1(b)(1)], the ordinary meaning of the word 'loss' is the loss the victim actually suffered." *Id.*; *see also id.* at 257 ("The Guideline does not mention 'actual' versus 'intended' loss . . . . That absence alone indicates that the Guideline does not include intended loss."). This Court should follow the Third Circuit's persuasive holding and find that loss here should be limited to the loss actually suffered by victims. Because there is no actual loss here, there should be no loss enhancement.

### c. Alternatively, the court should not follow the loss definition in Application Note (3)(F)(i) because it conflicts with the Guidelines.

If the Court is not persuaded that Application Note 3(A) unlawfully expands the loss definition, the Court should follow the persuasive holdings of the Sixth and Ninth Circuits, and find that under *Kisor* and *Stinson*, Application Note (3)(F)(i) unlawfully expands the loss definition in the Guidelines.

First, under *Kisor*, the Sixth Circuit has held that the legal rule in Application Note F(i) is an improper reading of U.S.S.G. § 2B1.1(b)(1). *See United States v. Riccardi*, 989 F.3d 476, 488–89 (6th Cir. 2021). As noted above, Application Note (3)(F)(i) provides for a $500 loss-per-device rule, regardless of the actual loss incurred by a defendant's actions. Applying traditional canons of construction, the *Riccardi*

court observed that "loss" as used in U.S.S.G. § 2B1.1(b)(1), may have different meanings. *Id.* at 486 (noting loss can include emotional harms, economic harms, and the value of replacing something). However, even if there were some ambiguity to the use of the word, "[n]o reasonable person would define . . . 'loss' . . . as an automatic $500." *Id.* Accordingly, the court held that "[t]he commentary's bright-line $500 loss amount cannot be derived from [§ 2B1.1] by a process reasonably described as interpretation." *Id.* at 487 (quotation omitted; alterations in original). The Court here should follow the Sixth Circuit's reasoning and disregard Application Note F(i).

Alternatively, if the Court does not find *Riccardi* persuasive, it should follow the Ninth Circuit's holding that Application Note (3)(F)(i) is a plainly erroneous reading of the Guidelines under *Stinson*. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022). As the *Kirilyuk* court observed, *Stinson* requires that the Application Notes "interpret the guidelines, not contradict or add to them." *Id.* at 1138 (citation omitted). Application Note (3)(F)(i)'s $500-per-device multiplier, however, does not "illuminate" the meaning of loss at U.S.S.G. § 2B1.1(b)(1). *Id.* Instead it adds or modifies the meaning of loss by mandating "a pre-determined, contrived amount with no connection to the crime committed, even if it is based on the Commission's research and data." *Id.* (citations and quotations omitted); *see also Riccardi*, 989 F.3d at 493 (Nalbandian, J., concurring) (observing Application Note (3)(F)(i) violates *Stinson*); *United States v. Alford*, No. 3:21CR052/MCR, 2022 WL 3577373 (N.D. Fla. Aug. 20, 2022) (finding the reasoning in *Riccardi* and *Kirilyuk* persuasive). Accordingly, if the Court finds Application Note (3)(F)(i) does not violate

*Kisor*, it should adopt the reasoning in *Kirilyuk*, and find that this note violates *Stinson*.

For these reasons, the Court should deny the four-point increase to Mr. Moss's total offense level.

**C. Erroneous criminal history calculation.** The PSI erroneously attributes to Mr. Moss three[1] criminal history points for a criminal category of II based on prior sentences. Mr. Moss should receive one criminal history point.

First, the PSI erroneously attributes one criminal history point for a 2015 possession of cannabis charge that resulted in "[a]djudication withheld, fines." PSI ¶ 37. Pursuant to U.S.S.G. § 4A1.2, however, points are added for a prior sentence only where "sentence[s] [were] previously imposed upon adjudication of guilt, whether by guilty plea, trial or plea of *nolo contendere*[.]" Here, Mr. Moss's 2015 charge resulted in a withheld adjudication, and is not a prior sentence within the meaning of U.S.S.G. § 4A1.2. Accordingly, this 2015 charge should not count as a prior sentence, and Mr. Moss should not receive a criminal history point for it.

---

[1] In an apparent typographical error, the PSI later states Mr. Moss has "five criminal history points." PSI ¶ 40. This error should also be corrected.

### III. Conclusion

Based on the foregoing, Mr. Moss respectfully contends his offense level computation should be as follows:

| | |
|---|---:|
| Base offense level pursuant to § 2B1.1(a)(2): | 6 |
| Loss amount pursuant to § 2B1.1(b)(1)(B): | +0 |
| Acceptance of responsibility pursuant to § 2E1.1: | -2 |
| **Total offense level:** | **4** |

And asks that this Court grant his objections and modify the PSI accordingly.

Respectfully submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By: /s/ Aimee Ferrer
Aimee Ferrer
Assistant Federal Public Defender
Florida Bar No. 17827
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
Email: aimee_ferrer@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on **February 3, 2023,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


By: *s/ Aimee Ferrer*