UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. <u>22-CR-20275-MARTINEZ</u>

**UNITED STATES OF AMERICA**

vs.

**LAVON MOSS JR.,**

       **Defendant.**
_____/

### GOVERNMENT'S RESPONE TO DEFENDANT'S OBJECTIONS TO THE PSR

The United States of America, through the undersigned Assistant United States Attorney, submits this response to the defendant's objections to the PSR (DE 48). The Court should overrule the defendant's objections to paragraphs 19, 40, the objections to the defendant's criminal history category, and the objections to the intended loss calculation for the reasons outlined below.

A. **RESPONSE TO OBJECTIONS TO PSR**

**Paragraph 12 of the PSR**

The government does not oppose this objection. The search warrant issued at the defendant's residence did not involve the investigation of a robbery. It involved the investigation of the sale of narcotics from the defendant's residence.

**Paragraph 14 of the PSR:**

The defendant was not arrested on January 10, 2022. He was detained and interviewed that day, but was not arrested until after the arrest warrant was issued for the Indictment in this case.

**Paragraph 19 of the PSR:**

The defendant objects to the information in paragraph 19 and probation's decision not to allot acceptance of responsibility points to the defendant's guideline calculation. Probation is

within their right to do this – and the Court within its right to agree. The Court should overrule the defendant's objection. The defendant, while on pretrial release, does not have a right to violate his pretrial release conditions -and probation, being the entity that is, at the direction of the Court, supervising the defendant while on release, has an obligation to supervise and investigate any violations that occur. That is what they did. Assuming, *arguendo*, that there is any merit in the defendant's argument that probation should not have questioned the defendant about his marijuana usage – it does not matter. He tested positive for marijuana. The Court need not rely on anything the defendant said – probation is reporting a positive urinalysis test. Further, probation reported that the defendant also failed to comply consistently with his treatment. Since a positive urinalysis test means the defendant failed to refrain from continued criminal activity, the Court is within its right not to grant acceptance of responsibility points. *See United States v. Douglas*, 784 F. App'x 676, 682 (11th Cir. 2019) (holding that even a single positive drug screen can support the district court's conclusion not to grant acceptance of responsibility points, especially when combined with a failure to produce mitigating evidence that such drug usage was legal and validly prescribed.) Whether the possession of marijuana at some point in the future will be legalized is not the issue before this Court. As it stands, possession of marijuana is illegal. Violations of law (or in this case, pretrial release conditions) are not assessed based on future speculation – they are assessed based on the state of law as it currently stands.

### **Loss Amount Calculations and the Advisory Guidelines:**

The defendant objects to the application of an intended loss amount, arguing that under *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc) and *Kisor v. Wilkie*, 139 S.Ct 2400, 2422 (2019), the Court should not rely on the application notes in the advisory guidelines as it relates to loss amount, and that the application notes "impermissibly" broaden the definitions of

2

loss. Probation calculated, as they always do, the intended loss amount based on the number of victims and concluded the loss amount is between $15,000 and $40,000, therefore resulting in an increase in the defendant's base offense level by four points. The defendant objects for the reasons stated above. The Court should reject his arguments and continue to apply the longstanding general rule that loss is the greater of actual or intended loss for three main reasons.

First, while *Dupree* clarified how to analyze whether guidelines commentary is binding, its application of that analysis to § 4B1.2 did not undermine *United States v. Moran*, 778 F.3d 942, 973 (11th Cir. 2015) to the point of abrogation. That precedent still applies to this case. Second, even if this Court were to take a fresh look at U.S.S.G. § 2B1.1, the first step of the *Kisor* framework leads to the same general rule. "Loss," when read alongside other guidelines instructions, unambiguously captures intended loss. Third, to the extent that the term "loss" is genuinely ambiguous, Application Note 3 reasonably interprets that term. And because it represents the Commission's official position, it implicates its substantial sentencing expertise, and reflects its fair and considered judgment, it is entitled to controlling weight under both *Kisor* and *Dupree*.

**A. Dupree did not overrule or abrogate this Court's intended-loss amount cases.**

This district has long interpreted loss, in the context of U.S.S.G. § 2B1.1, to mean the greater of actual versus intended loss. *See, e.g., Moran*, 778 F.3d at 973. And this Court must follow *Moran* (and other cases interpreting § 2B1.1) unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by the Eleventh Circuit sitting en banc. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

*Dupree* did not explicitly overrule *Moran*. Nor did it undermine it to the point of abrogation. True, it found *Kisor*'s updated *Auer*-defense framework applies to the Guidelines context. *See*

3

*Dupree*, 57 F.4th at 1275. But it did so on the way to answering a narrow question: whether, in light of § 4B1.2's exclusion of inchoate offenses from its definition of the phrase "controlled substance offense," the Guidelines commentary adding inchoate offenses is binding. *Dupree*'s application of the *Kisor* framework in the context of § 4B1.2 did not silently overrule every Eleventh Circuit case deferring to the Guidelines commentary accompanying other chapters or sections. *See Cannon v. Berry*, 727 F.2d 1020, 1022-23 (11th Cir. 1984) (expressing the Court's hesitation to infer that an en banc court overruled or abrogated "well-established law *sub silentio*").

In fact, *Kisor* declined to overrule *Auer* in part to avoid this type of regulatory uncertainty. The Supreme Court expressly denied its intent to "cast doubt on many settled constructions of rules." *Kisor*, 139 S. Ct. at 2422. Presuming *Dupree* overruled every case that has applied the Guidelines commentary risks exactly the type of "full-scale disruption" of settled rules that the Supreme Court sought to avoid. *See Dupree*, 57 F.4th at 1287 (Grant, J concurring) (refusing to read the majority opinion to preemptively overrule "every case that has applied the commentary").

**B. The standard tools of interpretation reveal loss, in the context of § 2B1.1, must include intended loss.**

Even if the Court were to revisit its prior precedent on intended loss, the *Kisor* framework would still lead to the same general rule. Careful consideration of the text, structure, purpose and history of U.S.S.G. § 2B1.1 shows loss must include intended loss. *See Kisor*, 139 S.Ct. at 2415.

Section 2B1.1(b) requires sentencing courts to increase the defendant's offense level by two-level increments if the "loss" exceeded certain dollar thresholds. USSG § 2B1.1(b). But (unlike § 4B1.2) § 2B1.1 itself does not define the term loss. Nor does any other provision in the Guidelines define it. Courts typically presume undefined terms bear their ordinary meaning. *See Schwarz v. City of Treasure Island*, 544 F. 3d 1201, 1214 (11th Cir. 2008). And dictionaries usually contain a word's ordinary meaning. *See In re Walter Energy, Inc.,* 911 F. 3d 1121, 1143 (11th Cir.

4

2018). But here, dictionaries leave out the ordinary meaning of loss. Loss means different things in different contexts. *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021). It might encompass an economic, emotional, physical, or other non-pecuniary harm. And it might include unforeseeable or unrealized harm.

In the face of uncertainty, *Kisor* demands more work. "[A] court cannot waive the ambiguity flag just because it found the regulation impenetrable on first read." 139 S. Ct. at 2415. Instead, "a court must exhaust all the 'traditional tools' of construction." *Id*. And "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nat'l Assn. of Home Builders v. Defenders of Wildlif*e, 551 U.S. 644, 666 (2007).

Turning to context next. One introductory guideline, in particular, offers important context about the overall Guidelines scheme. Section 1B1.3 defines the relevant conduct and harms courts *must use* (unless otherwise specified) to determine a defendant's offense level. U.S.S.G. § 1B1.3. As to relevant harms, it commands sentencing courts, in calculating the offense level, to consider "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (1)(2) above, and *all harm that was the object of such acts and omissions*." U.S.S.G. § 1B1.3(a)(3). That means sentencing courts must calculate the offense level considering both the defendant's actual and intended harms. The relevant harm provision as applied to § 2B1.1 protects against sentencing disparities by accounting for the defendant's intent. Imagine two fraud schemes in which each defendant submitted false and fraudulent applications to the same financial institution for $750,000 loans. The first defendant receives a $400,000 loan. And the second, simply doing a better job representing his need for a loan, receives a $600,000 loan. The relevant harm provision demands

5

treating these two defendants as equally culpable under § 2B1.1 based on the harm they intended to inflict on the victim.

In *United States v. Banks*, the Third Circuit disagreed, holding that "the ordinary meaning of the word 'loss' is the loss the victim actually suffered." 55 F.4th 246, 259 (3d Cir. 2022). But *Banks* glosses over key differences in the dictionary definitions to which it cites, and it concludes without explanation that these dictionary definitions "point to an ordinary meaning of 'actual loss.'" *Id. Banks* even acknowledges that, "in context," 'loss' could mean pecuniary or non-pecuniary loss and could mean actual or intended loss," yet makes no attempt to contextualize loss in this instance. *See id*. it seems instead to assume that simply because § 2B1.1 covers "basic economic offenses," loss presumptively means actual loss. And, most importantly, *Banks* never addresses, and may have been unaware of, the interaction between § 1B1.3 and § 2B1.1.

The Guidelines do not presume that loss means actual loss: on the contrary, harm includes actual *and* intended harm unless otherwise specified. USSG § 1B1.3(a)(3). Compare § 2B1.1 with § 2B1.4, which helps sentencing courts calculate the offense level for insider trading defendants. Section 2B1.4 measures culpability in terms of "gain" and adds offense levels in two-level increments based on the table in § 2B1.1(b)(1). But unlike § 2B1.1, it cabins gain with an important qualifier: the gain must "result[] from the offense." USSG § 2B1.4(b)(1). In other words, § 2B1.4 explicitly rebuts the presumption that harm includes actual *and* intended harms—only actual gains matter. Section 2B1.1 does not exempt itself from the relevant harm provision. Indeed, § 2B1.1 implements the Commission's goal to ensure defendants' sentences "reflect the nature and magnitude of the loss caused or intended by their crimes." USSG § 2B1.1, comment. (backg'd.). So, while ambiguity might exist "on the margins," *see Riccardi*, 989 F.3d at 479, no genuine

ambiguity exists with respect to the operative question: does loss include intended loss? (emphasis added). The Guidelines say yes.

### C. To the extent that loss is genuinely ambiguous, Application Note 3(A) provides a reasonable interpretation of that term.

At worst, emptying the legal toolkit leaves important "interpretive question[s]" about loss without a "single right answer," resulting in ambiguity for the Commission to resolve. *See Kisor*, 139 S. Ct. at 2415. Application Note 3(A) answers many of these interpretive questions. This Court should defer to it.

Under Note 3(A), loss means the greater of actual or intended loss. Actual loss "means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 comment. (n.3(A)(i)). And intended loss "means the pecuniary harm that the defendant purposely sought to inflict," including "intended pecuniary harm that would have been impossible or unlikely to occur." *Id*. 2B1.1 comment. (n.3(A)(ii)).

These definitions warrant deference under the *Kisor* framework. First, the definitions fall within the "zone of ambiguity" established by the tools of interpretation. *See Kisor*, 139 S. Ct. at 2415-16. Dictionaries say loss may mean different things depending on context, including unrealized pecuniary harms or unforeseeable non-pecuniary harms. Context says loss must account for actual and intended harms. And, in § 2B1.1, the Commission sought to ensure defendants' sentences "reflect the nature and magnitude of the loss caused or intended by their crimes." The definitions in Note 3(A) achieve this purpose and fall within the potential contextual meanings of loss.

Second, the character and context of the definitions also entitle them to controlling weight. Note 3(A) reflects the Commission's "authoritative" and "official" position. *See Kisor*, 139 S. Ct. at 2416. Indeed, similar definitions have been included int eh Guidelines since their inception. See

7

U.S.S.G. § 2F1.1 (1987). The commentary also implicates the Commission's substantive expertise in "[d]eveloping proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders." *Mistretta v. United States*, 488 U.S. 361, 279 (1989). And the commentary reflects the Commission's "fair and considered judgement," not an ad hoc position of convenience for litigation advantage. *Kisor*, 139 S. Ct. 2417-18. For all these reasons, this Court should continue to enforce the familiar rule that loss is the greater of actual or intended loss and overrule the defendant's objections. The Court should find that probation correctly calculated the guidelines.

**Paragraph 40 of the PSR**

The defendant objects to his criminal history computation, arguing that his withhold of adjudication for cannabis possession does not count towards his criminal history computation. This is not so. As probation noted in their response, the Eleventh Circuit has already ruled on this issue in *United States v. Elliot*, 732 F.3d 1307, 1213 (11th Cir. 2013), holding that a withhold of adjudication does constitute a conviction for purposes of applying the guidelines even if the state law does not recognize it to be a conviction. Therefore, the Court should overrule the defendant's objection.

**[Space Intentionally Left Blank]**

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court overrule the defendant's objections.

          Respectfully submitted,

          MARKENZY LAPOINTE
          UNITED STATES ATTORNEY

By:    */s/ Yara Dodin*
          Yara Dodin
          Assistant United States Attorney
          Florida Bar No. 0124979
          99 NE 4th Street
          Miami, Florida 33132-2111
          Phone: (786) 761-3135
          Email: Yara.Dodin@usdoj.gov